**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**ALICIA R.,** *on behalf of* **DA,**

                                   **Plaintiff,**

    vs.                                                         **1:18-CV-818**
                                                                **(MAD)**

*Commissioner of Social Security,*

                                   **Defendant.**

---

APPEARANCES:                              OF COUNSEL:

**BUCKLEY, MENDLESON LAW FIRM**           **STEPHEN J. MASTAITIS, JR., ESQ.**
29 Wards Lane
Albany, New York 12204
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **EMILY M. FISHMAN, ESQ.**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL**
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action on July 17, 2018, pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for Supplemental Security Income ("SSI"). *See* Dkt. No. 1. On September

16, 2015, Plaintiff filed an SSI benefit application on behalf of her minor child ("DA"). *See*

Administrative Transcript ("Tr.") at 140. This application was denied and Plaintiff made a timely

request for a hearing in front of an Administrative Law Judge ("ALJ"). *See id*. at 78-84, 93. A

hearing was held before ALJ Charlie M. Johnson on August 4, 2017. *See id*. at 49-75. On

October 5, 2017, the ALJ issued a decision denying Plaintiff's application. *See id*. at 17. Plaintiff

subsequently requested review by the Appeals Council and was denied such review. *See id*. at 1-

4. Presently before the Court are the parties' cross-motions for judgment on the pleadings. *See*

Dkt. Nos. 9, 10. Plaintiff alleges that the ALJ's determination regarding the severity of DA's

impairment is not supported by substantial evidence. *See* Dkt. No. 9 at 3.

## II. BACKGROUND

Plaintiff brings this action on behalf of her minor child, DA. *See* Tr. at 140. At the time

of the application, DA was less than two-and-a-half years old. *See id*. DA was diagnosed with

autism spectrum disorder on August 8, 2015. *See id*. at 266. The record indicates that DA has

been diagnosed with developmental delay, hyperactivity, sleep disturbance, and reactive airway

disease/asthma in addition to autism spectrum disorder. *See* Dkt. No. 9 at 4-5. The record

evidence in this case is undisputed and the Court adopts the parties' factual recitations. *See* Dkt.

No. 9 at 3-5; Dkt. No. 10 at 3 ("The Commissioner incorporates the summaries of the procedural

history and the medical and other evidence, as set forth by Plaintiff in her memorandum of law []

with the exception of any inferences or conclusions asserted by Plaintiff").

## III. DISCUSSION

A.    **Legal Standards**

For purposes of SSI, a person is disabled when she is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 1382(c)(3)(A). A child under the age of eighteen

will be considered disabled if it can be shown that he has "a medically determinable physical or

mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner has devised a three-step process for hearing officers to utilize in determining whether a child is disabled. 20 C.F.R. § 416.924(a). At step one, the ALJ is charged with determining whether the claimant is engaged in "substantial gainful activity," which is defined as "work activity that involves doing significant physical or mental activities" typically in exchange for "pay or profit." *Id.* § 416.972(a)-(b). If the claimant is not engaging in substantial gainful activity, then the ALJ may proceed to step two, at which the ALJ must determine whether the claimant has "an impairment or combination of impairments that is severe." *Id.* § 416.924(a). If the claimant is found to have a severe impairment or a combination of severe impairments, the analysis proceeds to the third step, at which point the ALJ must determine whether the claimant has an impairment or combination of impairments that "meets, medically equals, or functionally equals" a presumptively disabling condition found within the listings of impairments (the "Listings"). *Id.*; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

To be found disabled, a minor must have a medically determinable impairment(s) that is severe. *See* 20 C.F.R. § 416.924(c). If the impairment is only a slight abnormality, or a combination of slight abnormalities, that causes no more than minimal functional limitations, then it is not a severe impairment. *See id*.

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Record to ascertain whether the correct legal standards were

3

applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial

evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*,

805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, the Court must afford the

Commissioner's determination considerable deference, and may not substitute "its own judgment

for that of the [Commissioner], even if it might justifiably have reached a different result upon a

de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.

1984).

**B.     ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that DA had not engaged in

substantial gainful activity since September 16, 2015, the date of Plaintiff's application for SSI.

*See* Tr. at 23. At step two, the ALJ concluded that DA has an autistic disorder, a severe

impairment. *See id*. At step three, the ALJ determined that Plaintiff did not have an impairment

or combination of impairments that functionally equals the severity of any impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. *See id*. at 24. Because DA did not have an impairment

or combination of impairments that met, medically equaled, or functionally equaled the Listings,

the ALJ concluded that DA was not disabled. *See id*. at 39.

**C.     Analysis**

In seeking review of the Commissioner's decision, Plaintiff does not take issue with the ALJ's conclusions at steps one or two, but argues that the ALJ erred by concluding DA did not have an impairment of sufficient severity to satisfy the requirements of 20 C.F.R. § 416.924. Thus, the Court will focus it's analysis on the ALJ's examination of the severity of DA's impairment.

A child's functional limitations are evaluated pursuant to criteria set forth in the following six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *see also Keene ex rel. J.T. v. Astrue*, No. 10-cv-00360, 2012 WL 5269624, *7 (N.D.N.Y. Oct. 24, 2012). A medically determinable impairment or combination of impairments is considered to functionally equal a condition in the Listings if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A marked limitation is characterized as any limitation that is "more than moderate but less than extreme." *Id.* § 416.926a(e)(2)(i) (internal quotation marks omitted). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

Plaintiff takes issue with the ALJ's decisions for the following three domains: (1) ability to interact with others, (2) attending and completing tasks, and (3) caring for himself. *See* Dkt. No. 9 at 3. Plaintiff also claims that the ALJ's erroneous decision was due to the ALJ's improper

assignment of great weight to the state agency medical opinion and dismissal of Plaintiff's

testimony as not entirely consistent with the medical and other record evidence. *See id*. at 11-12.

### 1. *Weighing the Evidence*

Here, Plaintiff alleges that the ALJ improperly rejected Plaintiff's testimony as

inconsistent with the record in favor of the medical opinion provided by the state agency

evaluator. *See* Dkt. No. 9 at 11-12.

"While the ALJ is required to take into account a claimant's reports of pain, symptoms,

and other indicia of impairment, she is not required to accept those reports 'without question.'"

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); 20 C.F.R. § 416.929(a). Instead, she "may

exercise discretion in weighing the credibility of the claimant's testimony in light of the other

evidence in the record." *Id*. (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The

ALJ's credibility findings receive "special deference" because of his ability to observe the

claimant's testimony. *See Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994). Like

other findings of the ALJ, the credibility finding is reviewed for whether it is supported by

substantial evidence. *See Hopkins v. Colvin*, No. 13–cv–4803, 2014 WL 4392209, *5 (S.D.N.Y.

Sept. 5, 2014); *Torres v. Colvin*, No. 12–cv–6527, 2014 WL 241061, *12 (S.D.N.Y. Jan. 22,

2014). "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept

the description provided by testimony of the person most familiar with the child's condition, such

as a parent." *Briggs ex rel. D.H. v. Colvin*, No. 7:15-CV-71, 2016 WL 344973, *17 (N.D.N.Y.

Jan. 27, 2016) (citations omitted). "In such a case, the ALJ must make specific findings

concerning the credibility of the parent's testimony, just as he would if the child was testifying."

*Id*.

The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and other limitations, and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *See Marcus*, 615 F.2d at 27. The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier*, 606 F.3d at 49 (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and

7

XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996). One strong indication of

credibility of an individual's statements is their consistency, both internally and with other

information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and

any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony."

*Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§

404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly

and with sufficient specificity to enable the Court to decide whether there are legitimate reasons

for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior*

*v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604,

608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that

it is inconsistent with medical evidence, the lack of medical treatment, and her own activities

during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,

*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the

Commissioner has stated that

> it is not sufficient for the adjudicator to make a single, conclusory
> statement that "the individual's allegations have been considered" or
> that "the allegations are (or are not) credible." It is also not enough
> for the adjudicator simply to recite the factors that are described in
> the regulations for evaluating symptoms. The determination or
> decision must contain specific reasons for the finding on credibility,
> supported by the evidence in the case record, and must be
> sufficiently specific to make clear to the individual and to any
> subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

Here, the ALJ found that DA's medically determinable impairment could reasonably be expected to produce the alleged symptoms. *See* Tr. at 25. However, the ALJ found the statements concerning the intensity, persistence and limiting effects of these symptoms, provided by Plaintiff, to be not entirely consistent with the medical and record evidence. *See id*. Specifically, the ALJ believed Plaintiff's statements regarding DA's functioning to be "overstated." *See id*.

Plaintiff claimed that DA was only able to speak three or four words and was unable to communicate well enough for anyone to fully understand him. *See* Tr. at 171. However, the record indicates that DA is able to communicate effectively at school through both words and gestures. *See id*. at 213, 235. Further, medical records show that DA does not have extremely limited language skills. *See id*. at 382. As of 2017, DA was able to speak in three to four word sentences and had a vocabulary of greater than fifty words. *See id*. at 399. Plaintiff also claimed that DA's ability to perform daily activities has worsened since the filing of the SSI application, yet the records indicate that DA is able to perform routine daily tasks with some modeling and verbal reminders. *See id*. at 212. For example, when reminded, DA is able to clean up, put away used items, hang up his coat and backpack, put away his books, and wash and dry his hands. *See id*. In light of the medical and record evidence, the Court finds that the ALJ's determination that Plaintiff's testimony regarding the intensity, persistence and limiting effects of DA's symptoms were not entirely consistent with the medical and record evidence is supported by substantial evidence. Additionally, the ALJ provided a sufficient explanation for his credibility determination regarding Plaintiff. The ALJ explained that he believed Plaintiff's claims regarding DA's functioning to be "overstated" and cited to medical and record evidence that contradicted or described less severe symptoms than the information provided by Plaintiff. *See id*. at 25.

Accordingly, the Court finds that the ALJ properly weighed Plaintiff's credibility on the issue of intensity, persistence, and limiting effects of DA's symptoms.

Having found the Plaintiff's testimony to be not entirely consistent with the medical and record evidence, the ALJ assigned "great weight" to the opinion of the state agency examiner. *See* Tr. at 30. Plaintiff alleges that the ALJ erroneously relied upon the state agency medical opinion, claiming a lack of records regarding the evaluator's professional qualifications and description of evidence reviewed. *See* Dkt. No. 9 at 11. The Court finds this argument to be without merit. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6P, 1996 WL 374180, at *2. Additionally, the state examiner indicated that she considered all "medical, early intervention, school/pre-school, parent/caregiver, and other relevant evidence." *See* Tr. at 84. The examiner also listed the evidence of record and all of the evidence that has been requested. *See id*. at 79-80.

### 2. The ALJ's Consideration of DA's Functioning in the Relevant Domains

As previously mentioned, Plaintiff only challenges the ALJ's conclusions regarding three domains: (1) ability to interact with others, (2) attending and completing tasks, and (3) caring for himself. *See* Dkt. No. 9 at 3. Accordingly, the Court's analysis will be limited to the three domains challenged in Plaintiff's papers.

#### a. Ability to Interact with Others

In considering whether a child demonstrates limitations with regard to interacting and relating to others, a court should examine how effectively the child is able to interact with others. *See* Social Security Ruling ("SSR") 09-5P, 2009 WL 396026, at *3. A child should be able to not only use words, but facial expressions, gestures, and actions. *See id*. The child should be able to

"speak clearly enough to be understood, understand the message that another person is communicating, and formulate sentences well enough to convey a message." *Id*. A typical child between the ages of one and three should begin to express emotions and respond to the feelings of others; show interest in, play alongside, and eventually interact with other children; communicate wishes or needs, first with gestures and later with words that can be understood most of the time by people who know the child best. *See id*. at 5-6.

The ALJ noted, and the record supports, that DA was attempting to make friends in school and was interacting with other children. *See* Tr. at 28, 227. One of his evaluators noted DA's increased interest in other children in the classroom and his desire to offer assistance to his classmates. *See id*. at 215. DA is developing a speaking vocabulary and was more regularly using words, signs, and gestures in a comprehensible fashion. *Id*. at 235. DA is able to make verbal requests and will use gestures to indicate "more," "all done," and "help." *See id*. at 213. DA is receptive to support from adults. *See id*. at 214. Finally, DA can respond to questions asked of him with both verbal and non-verbal responses. *See id*.

The ALJ noted that DA does have a marked limitation in interacting with and relating with others, as demonstrated by his difficulty maintaining interactions and his occasional outbursts. *See* Tr. at 34. However, the ALJ noted, and the record supports, that outbursts and issues expressing himself were infrequent. *See id*. at 34, 238. The medical and record evidence, as described above and in the ALJ's decision, indicate that DA's limitation does not seriously interfere with his ability to independently initiate, sustain, or complete activities. *See id*. at 34; *see also* 20 C.F.R. § 416.926a(e)(3). Despite his limitation, DA is still able to participate in school activities, engage with classmates, and communicate with those around him. *See* Tr. at 213, 215, 227, 235. Accordingly, the Court finds that the ALJ's decision that DA has a marked,

11

but not extreme, limitation in interacting and relating with others is supported by substantial evidence.

### b. *Attending and Completing Tasks*

In considering whether a child demonstrates limitations in attending and completing tasks, a court must consider the "child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks" as well as the "child's ability to change focus after completing a task." SSR 09-4P, 2009 WL 396033, at *2. A typical child between the ages of one and three should attend to things of interest, have adequate attention to complete some tasks independently, and demonstrate sustained attention. *See id*. at *4-5.

Here, the ALJ noted, and the record supports, that DA was increasingly able to follow teacher instructions and appropriately transition throughout the school day. *See* Tr. at 33, 243. At home, Plaintiff testified that DA is able to watch complete episodes of cartoons and plays with train sets. *See id*. at 63, 67. The record further indicates that DA is able to complete a variety of academic tasks and seems to particularly enjoy tasks involving crafts, puzzles, matching games, toys, and building blocks. *See id*. at 212. The record also indicates that DA is able to attend to instruction for up to twenty minutes with some verbal prompting. *See id*.

The ALJ concluded that, while DA had some limitations in attending and completing tasks, any limitations are less than marked. *See id*. at 33. The record indicates that despite DA's occasional difficulties in maintaining attention, his limitation does not seriously interfere with his ability to function independently, appropriately, effectively, and on a sustained basis. *See* 20 C.F.R. § 416.926a(e)(3). As indicated by the ALJ, and in the record, DA is able to adequately complete a variety of academic tasks and engages in tasks that interest him at home. *See* Tr. at

63, 67, 212.  Accordingly, the Court finds that the ALJ's decision that DA has less than marked

limitations in attending and completing tasks is supported by substantial evidence.

### c. *Caring for Himself*

In considering whether a child demonstrates limitations in caring for himself, a court must

consider the "child's ability to maintain a healthy emotional and physical state."  SSR 09-7P, 2009

WL 396029, at *2.  Generally, this includes the child's ability to meet his emotional and physical

wants and needs, cope with stress and changes in the environment, and take care of his health and

possessions.  *See id*.  A typical child between the ages of one and three will not only begin to

cooperate with care givers in dressing and bathing, but will also begin to show what he can do

independently; and experiment with independence and declaring his own identity.  *See id*.

Here, the ALJ determined that DA has less than marked limitations in the ability to care

for himself.  *See* Tr. at 37.  The ALJ noted, and the record supports, that DA is able to perform

many daily living skills, clean up and put away items, displayed responsibility for his personal

items, and could independently wash his hands.  *See id*. at 37, 212.  The record further

demonstrates that DA has begun to use words and signs to communicate his wants and needs.  *See

id*. at 235.  DA is beginning to experiment with independence by shouting "no."  *See id*. at 238.

DA is also developing coping skills.  For example, DA will use a separate room to de-escalate

after an outburst, is learning breathing exercises, and is able to de-escalate after approximately

ten-to-thirty minutes.  *See id*. at 212, 239, 240.

The ALJ concluded that, while DA has some limitations in his ability to care for himself,

any limitations are less than marked.  *See id*. at 37.  The record indicates that despite DA's history

of attempts to run away from home and under-developed coping, his limitation does not seriously

interfere with his ability to function independently, appropriately, effectively, and on a sustained

basis. *See* 20 C.F.R. § 416.926a(e)(3). As indicated by the ALJ, and in the record, DA has begun to develop effective coping mechanisms, displays responsibility and independence, and can communicate his needs and wants to those around him. *See* Tr. at 212, 235, 239, 240. Accordingly, the Court finds that the ALJ's decision that DA has less than marked limitations in his ability to care for himself is supported by substantial evidence.

The ALJ concluded, and Plaintiff has not contested, that DA has no limitation in acquiring and using information, moving about and manipulating objects, and in health and physical well-being. *See id.* at 31, 36, 38. Because the Court finds that the ALJ properly determined DA's limitations in the remaining domains, the Court finds that DA does not demonstrate a marked limitation in two domains or an extreme limitation in one domain. Thus, the ALJ properly determined that DA is not disabled for the purposes of the Social Security Act.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 28, 2019
      Albany, New York

Mae A. D'Agostino
U.S. District Judge